UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| BRADLEY PRATER, et al. | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00769-JRS-DLP |
| | ) | |
| WEBER TRUCKING COMPANY, INC., et al. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Denying Conditional Certification of Collective Action**

Plaintiffs Bradley Prater and John Needler allege claims against Defendants Weber Trucking, Inc. and Jeff Weber for unpaid overtime wages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and for unpaid wages under Indiana's wage payment statute, IND. CODE § 22-2-5-1 *et seq.* (Am. Compl. ¶¶ 41–54, ECF No. 31.) Specifically, Plaintiffs allege that a dispatcher instructed (and continues to instruct) drivers to "take out" half an hour for a lunch break each day the driver works past 1:00 p.m., even though the drivers do not stop working for a lunch break. The drivers set their own schedules, record their own hours, and are paid by the load.

Plaintiffs now move for conditional certification of this lawsuit as a collective action "for and in behalf of . . . themselves and other employees similarly situated" under section 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiffs' proposed collective action, narrowed in response to Defendants' objections, (*compare* Pl.'s Mot. 1, ECF No. 28 *with* Pl.'s Reply 6, ECF No. 42), would comprise

1

> All present and former truck drivers employed by Weber Trucking Company, Inc. who were employed on or after February 7, 2016 who were / are instructed to deduct 30 minutes from their daily time if they worked / work eight (8) or more hours despite the fact that they had / did not take a lunch break which resulted in unpaid overtime wages.

(Pl.'s Br. Reply 1, ECF No. 28.) In support, Plaintiffs present their affidavits, as well as the affidavits of two other drivers, stating that their dispatcher, Angie, told them to record a thirty-minute lunch break even though they did not and do not take a lunch break. (Prater Aff., ECF No. 28-1; Needler Aff., ECF No. 28-3; Glenn Aff., ECF No. 42-3; Fagan Aff., ECF No. 42-4.) Defendants respond that Plaintiffs have not established a pay practice common to the putative class, citing timesheets where Plaintiffs did not record a lunch break and affidavits from two drivers stating that they were instructed to take a lunch break and do, in fact, take a lunch break. (Barnett Aff., ECF No. 39-1; Umbriet Aff., ECF No. 39-2; Sprague Aff., ECF No. 39-4.)

The FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Such collective actions provide employees "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The FLSA does not prescribe collective action procedures, so district courts have "wide discretion to manage collective actions." *Alvarez*, 605 F.3d at 449 (citing *Hoffman-La Roche*, 493 U.S. at 171). "[T]he majority of courts . . . have adopted a two-

step process for determining whether an FLSA lawsuit should proceed as a collective action." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases); *see also Williams v. Angie's List, Inc.*, Cause No. 1:16-cv-878-WTL-MJD, 2017 WL 1546319, at *2 (S.D. Ind. April 27, 2017) ("In this circuit, district courts generally follow a two-step inquiry when certifying collective actions.").

The first step, which is at issue here, is conditional certification. The "Supreme Court has endorsed this practice—indeed, it has gone further and characterized it as an important step in these cases." *Hollins v. Regency Corp.*, 867 F.3d 830, 833 (7th Cir. 2017). Unlike class certification under Rule 23, under the FLSA, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (internal citations omitted). Conditional certification takes place before significant discovery occurs and may be reconsidered by the district court after discovery has been completed, even in the absence of new evidence. *Weil v. Metal Techs.*, 925 F.3d 352, 357 (7th Cir. 2019).

Although the consequences of conditional certification of a collective action differ materially from class certification under Rule 23, the core inquiry for conditional certification—whether plaintiffs and potential plaintiffs are "similarly situated"—is essentially the same as the "common question" inquiry under Rule 23(a)(2). *See Campbell v. City of Los* Angeles, 903 F.3d 1090, 1115 (9th Cir. 2018) (noting that "[t]he 'common question' requirement within Rule 23 . . . bears a close resemblance to the

3

'similarly situated' requirement of section 216(b)," but warning against importing other Rule 23 prerequisites into the collective action context). As with a Rule 23 class action, a core consideration for certification is whether there is a material issue that "is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 375 (7th Cir. 2015) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012)).

To determine whether potential plaintiffs are so "similarly situated" as to justify conditional certification, district courts look for a "modest factual showing" that the potential plaintiffs were subject to a common pay practice, policy, or plan that violated the FLSA. *See Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (collecting cases); *Williams*, 2017 WL 1546319, at *2. Though the plaintiffs' burden is not onerous, conditional certification is not a mere formality. "Plaintiffs need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy. The Court evaluates the record before it, including the defendant's oppositional affidavits." *Muir v. Guardian Heating & Cooling Servs., Inc.*, Case No. 16 C 9755, 2017 WL 959028, at *2 (N.D. Ill. March 13, 2017) (quotation marks and citations omitted). Moreover, "[t]he role of the district court in defining the scope of the potential FLSA collective action is more than ministerial. The named plaintiff is free to allege whatever she wants for her group,

but the court must assess that proposed definition and assure itself that the employees identified are raising similar FLSA claims. In exercising this power, district courts do not hesitate to pare down the group or to deny conditional certification altogether." *Hollins*, 867 F.3d at 834. "Where the plaintiff has not made at least a modest factual showing that certification is appropriate, it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a class action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008) (quotation marks, brackets, and citation omitted).

At this time and on this record, this case lacks the glue to bind together a collective action. Plaintiffs contend that a collective action is appropriate due to Defendants' common policy of requiring drivers to deduct thirty minutes from their shifts for lunch. But Plaintiffs set their own schedules and record their own hours, and the alleged policy was communicated to them orally, by a single dispatcher, on an individual basis. Thus, the alleged common policy does not appear to be "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Bell*, 800 F.3d at 375.

Moreover, even if the deduction policy is amenable to class-wide proof, "an automatic-deduction policy by itself comports with the FLSA, and thus cannot serve as the lone point of similarity supporting class certification." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 673 (6th Cir. 2012) (citation omitted). Whether the

5

deduction requirement resulted in FLSA violations will depend on, among other things, whether an individual driver did, in fact, take a lunch break. But there are no allegations here—in either the complaint or Plaintiffs' submissions in support of certification—tying together individual drivers' lunch habits. Plaintiffs do not, for example, allege that the nature of the job prevents drivers from taking lunch breaks or that Defendants impose conditions on lunch breaks that amount to compensable work. Without some facts tending to show that skipping lunch breaks is capable of proof "common to the class rather than individual to its members," courts typically deny conditional certification. *See, e.g.*, *Kolish v. Metal Techs., Inc.*, No. 2016-cv-145, 2017 WL 525965, at *16 (S.D. Ind. Feb. 8, 2017) ("To establish liability, the Court would need to inquire into each employee's circumstances to determine whether that employee took unpaid lunch breaks of twenty minutes or less in violation of the FLSA."); *Walker v. Health & Hosp. Corp. of Marion Cty.*, 2016 WL 7179370, at *5, *11 (S.D. Ind. Dec. 9, 2016) (denying certification, despite evidence that the department was "consistently understaffed," that employees were "required to stay in their assigned area during meal breaks," were "required to keep their pager and phones on them and turned on," and were "required to answer pages and phone calls during their meal breaks," because plaintiffs' vague statements about "culture" and "work environment" did not provide information regarding "what led the declarants to believe that they were not supposed to request pay for missed or interrupted meal breaks"); *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860 (N.D. Ill. 2013) ("The showing made by the plaintiffs is essentially limited to the meal-break

6

rule as experienced by nurses and hospital employees who are engaged in the direct care of patients. The nature of their interrupted meal breaks was affected by the demands of patient care."); *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905, at *4 (N.D. Ill. Aug. 10, 2011) (narrowing plaintiffs' proposed class to certify a collective action on behalf of "nurses and other direct patient care providers whose duties, by their nature, often resulted in interrupted meal breaks"); *Adair*, 2008 WL 4224360, at *6 ("[N]ot one of the plaintiffs explains why this was her understanding, or why she believes Wisconsin Bell 'expected' her to be ready to accept a call from the very beginning to the very end of her scheduled tour. . . . Surely no further discovery should be required for the plaintiffs to explain the nature or source of the expectation they allege, or the factual basis of their own understandings of what was required of them. These are, or should be, matters that are within their own personal knowledge.").

Accordingly, conditional certification is unwarranted at this time, and Plaintiffs' motion (ECF No. 28) is **denied**. Should Plaintiffs uncover evidence supporting a collective action, they may move again for conditional certification.

**SO ORDERED.**

Date: 3/9/2020

*[signature]*

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Tessa L. Castner
FROST BROWN TODD LLC (Cincinnati)
tcastner@fbtlaw.com

Neal Shah
FROST BROWN TODD LLC
nshah@fbtlaw.com

Ronald E. Weldy
WELDY LAW
rweldy@weldylegal.com

Heather L. Wilson
FROST BROWN TODD LLC (Indianapolis)
hwilson@fbtlaw.com